UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHERYL M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-01362-TWP-MJD |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Cheryl M.[1] requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). For the following reasons, the Court **affirms** the decision of the Acting Commissioner.

### I. PROCEDURAL BACKGROUND

On September 23, 2014, Cheryl M. protectively filed applications for DIB and SSI. (Filing No. 7-2 at 28.) She initially alleged a disability onset date of December 31, 2011, (Filing No. 7-5 at 2), but appears to have amended her onset date to the date she stopped working, January 15, 2012, (Filing No. 7-6 at 2; Filing No. 7-6 at 6.) Her applications were initially denied on December 22, 2014, (Filing No. 7-4 at 4; Filing No. 7-4 at 13), and upon reconsideration on March 17, 2015, (Filing No. 7-4 at 24; Filing No. 7-4 at 31). Administrative Law Judge Belinda Brown (the "ALJ")

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

conducted a hearing on January 24, 2017, at which Cheryl M., represented by counsel, and a vocational expert, Matthew Lampley, appeared and testified. ([Filing No. 7-2 at 43-63](Filing No. 7-2 at 43-63).) The ALJ issued a decision on March 27, 2017, concluding that Cheryl M. was not entitled to receive DIB or SSI. ([Filing No. 7-2 at 25](Filing No. 7-2 at 25).) The Appeals Council denied review on March 15, 2018. ([Filing No. 7-2 at 2](Filing No. 7-2 at 2).) On May 3, 2018, Cheryl M. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. ([Filing No. 1](Filing No. 1).)

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §

---

[2] The Code of Federal Regulations contains separate, parallel sections for DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable

3

mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III.    FACTUAL BACKGROUND

Cheryl M. was 50 years of age at the time she applied for benefits, (Filing No. 7-5 at 2) alleging she could no longer work due to fibromyalgia, carpal tunnel syndrome in both arms, arthritis, and spinal stenosis. (Filing No. 7-6 at 68.) She has completed high school and previously worked in sales, retail, and as a receptionist. (Filing No. 7-6 at 7.)[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Cheryl M. was not disabled. (Filing No. 7-2 at 36.) The ALJ found that Cheryl M. last met the insured status requirements of the Act through September 30, 2014 (the date last insured or "DLI").[4] (Filing No. 7-2 at 30.) At step one, the ALJ

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Cheryl M. must prove the onset of disability on or before her DLI to be eligible for DIB. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. Recognizing that Cheryl M. also had a claim for SSI,

4

found that Cheryl M. had not engaged in substantial gainful activity since January 15, 2012, the amended onset date.[5] *Id*. At step two, the ALJ found that she had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral hips, and bilateral carpal tunnel syndrome. *Id*. At step three, the ALJ found that Cheryl M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 7-2 at 32.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She is limited to lifting, carrying, pushing or pulling up to ten pounds occasionally and less than ten pounds frequently. She is able to stand and/or walk for up to two hours during an eight-hour workday. She is able to operate hand controls frequently with either hand. She is not able to climb ladders, ropes, or scaffolds, but she is able to climb stairs or ramps occasionally. She is able to stoop, crouch, kneel, or crawl occasionally. She is not able to work around unprotected heights or moving mechanical parts. She is not able to operate commercial vehicles. She is able to tolerate vibrations occasionally.

(Filing No. 7-2 at 33-34 (footnote omitted).) At step four, the ALJ concluded that Cheryl M. was capable of performing her past relevant work as an appointment clerk. (Filing No. 7-2 at 36.)

## IV. DISCUSSION

Cheryl M. raises one issue on appeal that the ALJ's evaluation of her fibromyalgia was not supported by substantial evidence. The Court will address the issue.

Cheryl M. contends that the ALJ overlooked evidence establishing fibromyalgia as medically determinable impairment. (Filing No. 13 at 7.) She asserts that a "reasonable ALJ who

---

the ALJ's subsequent findings properly considered the relevant period at issue for that application beginning with the amended disability onset date, January 15, 2012, through the date of the decision. *See, e.g.*, (Filing No. 7-2 at 36).

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

understood the factual record could find that [she] was significantly more limited than the ALJ found . . . ." *Id*. Cheryl M. further asserts that the ALJ committed the same error as in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996), by erroneously relying on the absence of findings irrelevant to fibromyalgia to conclude that she was not as limited as she alleged. (Filing No. 13 at 8.) She contends that the combined errors were harmful. *Id*.

The Acting Commissioner contends that ALJ properly determined that fibromyalgia was not a severe impairment because there was no evidence that the fibromyalgia significantly limited Cheryl M.'s ability to perform basic work activities. (Filing No. 18 at 8.) The Acting Commissioner further contends that the step two determination is of no consequence to the outcome of the case, because the ALJ found other severe impairments and properly considered Cheryl M.'s mild fibromyalgia symptoms at the later steps of the sequential evaluation process. (Filing No. 18 at 8-9.)

The Court agrees with Cheryl M. that the ALJ failed to confront conflicting evidence that established that Cheryl M.'s fibromyalgia was a medically determinable impairment. "An individual's symptoms, […] will not be found to affect the ability to perform work-related activities for an adult […] unless medical signs or laboratory findings show a medically determinable impairment is present." Social Security Ruling ("SSR") 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *3. In discussing her step two findings, the ALJ cited the relevant ruling that guides evaluation of fibromyalgia, specifying that an adjudicator "may find that an individual has the medically determinable impairment if the physician who diagnosed the condition provides evidence that satisfies criteria based on standards of the American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia." (Filing No. 7-2 at 31 (citing SSR 12-2p (S.S.A. July 25, 2012), 2012 WL 3104869, at *2).) According to the ruling, one of the ways that

fibromyalgia can be established as a medically determinable impairment is by a history of widespread pain and at least eleven positive tender points out of eighteen tested locations in specific parts of the body. SSR 12-2p (S.S.A. July 25, 2012), 2012 WL 3104869, at *2-3. The ALJ reviewed multiple examinations that did not find the requisite number of tender points. ([Filing No. 7-2 at 31](#).) However, the ALJ did not mention an examination on July 31, 2014, performed by an appropriate treating specialist, rheumatologist Golda M. James, M.D., indicating that Cheryl M. had "14-point tenderness along the cervical spine, lumbar area, anterior chest-wall, elbows, and hip, consistent with fibromyalgia tender points." ([Filing No. 7-11 at 45](#).) The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)). Here, Dr. James assessed that Cheryl M. had "clinically diagnosed fibromyalgia." ([Filing No. 7-11 at 46](#).)

However, the ALJ did not rely solely on the absence of a medically determinable impairment. She continued to make an alternative finding that would be dispositive at step two. She reviewed the relevant evidence related to the impairment and reasoned that:

> The claimant's other symptoms can be attributed to other conditions. As noted above, the claimant has essentially normal range of motion, strength, finger and hand dexterity and gait. Hence, even if she does have fibromyalgia, it does not limit her ability to perform basic work-related activities and it is not a severe impairment.

([Filing No. 7-2 at 31](#).) "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

The Court finds that substantial evidence supports the ALJ's determination that Cheryl M.'s fibromyalgia was not a severe impairment. Even when fibromyalgia was diagnosed, Dr. James recommended "that she continues with her Lyrica. She continues to have good control of her pain with this medication, and we will defer management to the primary care doctor." ([Filing No. 7-11 at 46](#).) The ALJ cited evidence from a later follow-up visit on February 5, 2015, when Dr. James "indicated that the claimant had no signs of tenderness and that there was no reason for the claimant to return to see him." ([Filing No. 7-2 at 31](#) (internal citation omitted) (citing [Filing No. 7-20 at 7-8](#)).) The ALJ also cited some of the most current evidence of record in "a report dated January 2, 2017, a pain management specialist indicated that the claimant had only mild discomfort in the posterior shoulder girdle, but no trigger points." ([Filing No. 7-2 at 31](#) (citing [Filing No. 7-24 at 7-8](#)).) The treatment note indicated that use of Lyrica continued to "help for her myofascial pain . . . ." ([Filing No. 7-24 at 7](#)); *see* SSR 12-2p, 2012 WL 3104869, at *3 n.7 (discussing how myofascial pain syndrome is closely related to fibromyalgia in terms of its symptoms or signs). The evidence cited by the ALJ establishing good control of Cheryl M.'s fibromyalgia pain with medication, no further need for continuing specialist treatment, focus on treatment for more acute musculoskeletal conditions, and only mild continuing pain complaints supported the ALJ's determination that the impairment did not significantly limit Cheryl M.'s ability to do basic work activities. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (ALJ may consider the degree of pain suggested by the medical records, as well as the treatment sought); *see also Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) ("In either event the fact remains that [she] reported good pain control with what [she] used, and the resolution of competing arguments based on the record is for the [ALJ], not the court.").

To limited extent, the Court also agrees with Cheryl M. that the ALJ's evaluation of Cheryl M.'s fibromyalgia included a discussion of objective clinical signs that is not necessarily relevant to the impairment, such as range of motion and muscle strength testing. Fibromyalgia is an impairment that often alludes objective indications of its severity, such that the Seventh Circuit has described that "its symptoms are entirely subjective." *Sarchet*, 78 F.3d at 306.

However, unlike the Seventh Circuit decision in *Sarchet*, the Court does not find that the ALJ's reliance on inapplicable objective signs was compounded by "a substantial number of illogical or erroneous statements that bear materially on her conclusion that [Cheryl M.] is not totally disabled." *Sarchet*, 78 F.3d at 307. In *Sarchet*, the Seventh Circuit first identified "a pervasive misunderstanding of the disease" that included the faulty criticism of the claimant for seeking treatment for fibromyalgia with a rheumatologist, which the Circuit pointed out is the relevant specialty. *Id*. The Circuit also identified errors interpreting the medical facts, claimant's testimony, the vocational expert's testimony, as well as reliance on "unfounded sociological speculations" to discount the claimant's credibility. *Id*. at 307-08.

Here, the ALJ's conclusions were supported by relevant evidence. As noted above, the ALJ cited evidence that a rheumatologist did not consider further specialist treatment necessary, implying that Cheryl M.'s fibromyalgia was sufficiently managed by a primary care physician prescribing medication for pain. The ALJ also documented the absence of tender points on all of the examinations of record, except the one examination discussed above that led to the clinical diagnosis. According to the relevant ruling discussed above, tender points are an indication of fibromyalgia and their absence in the requisite number would tend to further support symptom control with ongoing treatment. The ALJ also discussed evidence showing complaints of only mild ongoing pain.

9

The ALJ's reliance on relevant evidence satisfies the Court that her conclusions cannot be disturbed under the deferential standard of review. The question is not as Cheryl M. poses it, whether a reasonable ALJ could have found her more limited based on the evidence of record. The question generally is whether there is substantial evidence that would allow a reasonable ALJ to make the opposite conclusion. Furthermore, when assessing a condition that is almost entirely based on subjective symptoms, the ALJ's evaluation of those symptoms is given even greater deference. An assessment of the severity of Cheryl M.'s subjective symptoms caused by her fibromyalgia is an undertaking reserved almost exclusively, if not entirely to the ALJ. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). As discussed above when evaluating the claimant's credibility, the standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong. For the valid reasons detailed above relevant to an evaluation of Cheryl M.'s pain, the Court does not find the ALJ's assessment was patently wrong.

Furthermore, the Court agrees with the Acting Commissioner that any error at step two specifically evaluating fibromyalgia would not necessarily be material to the outcome of the case. "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile*, 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). The ALJ credited Cheryl M.'s claim to a large extent in finding her limited to a reduced range of sedentary work based on her combined impairments. For the reasons detailed above, the Court does find merit in any of Cheryl M.'s arguments that the ALJ committed reversable error by not further crediting Cheryl M.'s pain to the extent that she could not perform sedentary work.

## V. CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Acting Commissioner is **AFFIRMED**. Cheryl M.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 4/5/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

J. Frank Hanley, II
LAW OFFICES OF J. FRANK HANLEY II, INC.
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov